Law Office of Robert F.T. Krassa, P.C., Robert F.T. Krassa, Pueblo, for petitioner-appellant.

Thomas E. Jagger Law Offices, John G. Scorgie, Pueblo, for respondents-appellees.

**SINGLETON SHEET METAL WORKS, INC., a Colorado corporation, Petitioner-Appellant,**

v.

**Billy MARTIN, as Director of the Department of Finance of the City of Pueblo, State of Colorado, a Municipal Corporation, and the City of Pueblo, a Municipal Corporation, Respondents-Appellees.**

No. 82CA0491.

Colorado Court of Appeals, Div. I.

Sept. 29, 1983.

Rehearing Denied Oct. 27, 1983.

Certiorari Denied May 21, 1984.

VAN CISE, Judge.

Singleton Sheet Metal Works, Inc. (Singleton), a Colorado corporation, is engaged in manufacturing and contracting, and has its principal place of business in Pueblo. The City of Pueblo (City) conducted a sales and use tax audit and determined that use tax was owing from Singleton for the period April 1974 through March 1977. Singleton filed a tax abatement bond and appealed the City's tax assessment to the district court. That court affirmed the City's determination except for a few items, held that tax was due on items valued at $140,-181.72, and entered judgment accordingly. Singleton appeals that part of the judgment holding use tax to be due on $82,-

063.20 worth of items, claiming that these items are materials purchased at wholesale and processed into manufactured products and, hence, are exempt from tax. We agree, and remand the case for modification of the judgment.

The evidence was undisputed that the contested items are: (1) raw materials in the form of sheet steel, flanges, pipe, or welding rod received at the Pueblo plant, manufactured into finished products or subassemblies, and shipped to Bechtel Corporation at the job site near Amarillo, Texas, where they were assembled into completed fume abatement and dust collection systems by Singleton personnel and then turned over to the customer; or (2) parts or equipment ordered from suppliers, received at the Pueblo plant, re-shipped to the Amarillo job site for field installation there by Singleton personnel in course of assembly of equipment, and incorporated into the finished product there; or (3) raw materials fabricated into manufactured products (parts for dust collection equipment) at the Pueblo plant and shipped to the Climax Molybdenum Company Henderson mine.

The City contends that these items were correctly found taxable under 1971 City of Pueblo Code of Ordinances (Code) § 14–4–63, which imposes a use tax "for the privilege of storing, using, or consuming in this City any articles of tangible personal property purchased at retail from sources outside the corporate limits of the City." Singleton asserts that the items do not fall within the definition of "purchased at retail" and, also, that the items should be exempt under the "manufacturing" provision of Code § 14–4–77(f).

Retail sale is defined in Code § 14–4–21(g) as any sale except a wholesale sale. As to wholesale sales, Code § 14–4–21(e) provides:

"Sales to and purchases of tangible personal property by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance, or commodity, which tangible personal property enters into the processing of or becomes an ingredient or component part of the product which is manufactured, compounded or furnished ... shall be deemed to be wholesale sales and shall be deemed to be exempt from taxation under this Chapter."

Code § 14–4–77(f) exempts tangible personal property from taxation if it "enters into the processing of or becomes an ingredient or component part of the product or service...."

The rationale for exemption is to avoid the pyramiding of tax costs. "[A] sales tax should be collected on the final consumptive transaction." *Carpenter v. Carman Distributing Co.*, 111 Colo. 566, 144 P.2d 770 (1943). Thus, if plans are to resell the item as is or as incorporated into a product, the tax is to be imposed upon the final sale.

The contested items became "an ingredient or component part of the product," Code § 14–4–77(f), and are "wholesale sales" under Code § 14–4–21(e). Under both sections, they are exempt from taxation.

The trial court's reliance on *Western Electric Co. v. Weed*, 185 Colo. 340, 524 P.2d 1369 (1974) and *Bedford v. Colorado Fuel & Iron Corp.*, 102 Colo. 538, 81 P.2d 752 (1938) to hold Singleton liable for taxes was misplaced. *Western Electric* and *Bedford* dealt with the meaning of "enters into the processing of or becomes an ingredient or component part of the product or service" provided for in § 39–26–102(20)(a), C.R.S.1973 (1982 Repl.Vol. 16B), which is part of the state sales and use tax statute and is worded substantially the same as the Pueblo Code provisions. In *Western Electric*, the court held as taxable items that were purchased by Mountain Bell from Western Electric which were used by Mountain Bell in providing telephone service but which did not become a constituent part of the service rendered. These included the vehicles, implements, and other apparatus required to provide the service. In reaching this conclusion, the court in *Western Electric* relied on *Bedford* in which it was stated:

"[W]e must conclude that to be exempt from the operation of the [tax] acts, tangible personal property purchased by a manufacturer and which enters into the processing of the manufactured product, must become a constituent part thereof, wholly or partially, by either chemical or mechanical means."

In the instant case, the items "entered into the processing" and became a constituent part of the manufactured product by mechanical means.

The cause is remanded for modification of the judgment consistent with this opinion.

PIERCE and BABCOCK, JJ., concur.